IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2015 JAN 27   AM 11: 17

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                    DEPUTY

WILLIAM GLENN and CHERYL GLENN,
                                    Plaintiffs,

-vs-                                                        Case No.  A-13-CA-701-SS

L. RAY CALHOUN & CO. d/b/a Calhoun and
Company, et al.; L. RAY CALHOUN AND
COMPANY d/b/a Calhoun and Company, et al.;
CALHOUN & COMPANY, INC. d/b/a Calhoun
and Company, et al.; LINDON RAY CALHOUN
a/k/a L. Ray Calhoun a/k/a L. Ray Calhoun,
Individually; ONEBEACON AMERICA
INSURANCE COMPANY; ASSURANCE
RESOURCES, INC.; TEXAS BUSINESS
PURCHASING ALLIANCE, INC.; and TY
TEMPLETON,
                                    Defendants.

_____

# O R D E R

BE IT REMEMBERED on the 8th day of January 2015, the Court held a hearing in the

above-styled cause, and the parties appeared by and through counsel.  Before the Court are

OneBeacon America Insurance Company's Motion for Summary Judgment [#56], Third Party

Plaintiff, L. Ray Calhoun & Co., d/b/a Calhoun and Company, et al.'s Responses [##63, 69], and

OneBeacon America Insurance Company's Reply [#70]; Defendants Texas Business Purchasing

Alliance, Inc. and Assurance Resources, Inc.'s Motion for Final Summary Judgment [#68], and

Third Party Plaintiff L. Ray Calhoun & Co., d/b/a Calhoun and Company, et al.'s  Response [#71];

Third-Party Defendant Ty Templeton's Motion for Summary Judgment [#74], Third Party Plaintiff

L. Ray Calhoun & Co., d/b/a Calhoun and Company, et al.'s Response [#80], and Templeton's Reply

[#81]; Third Party Plaintiff, L. Ray Calhoun & Co., d/b/a Calhoun and Company, et al.'s Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment [#78], and OneBeacon America Insurance Company's Response [#79]. Having considered the motions, responsive pleadings, the case file as a whole and the applicable law, the Court enters the following opinion and orders.

## Background

Plaintiffs William Glenn (Glenn) and his wife Cheryl Glenn filed suit in Texas state court in September 2012. Plaintiffs originally filed the suit against Glenn's former employer, L. Ray Calhoun & Co., d/b/a Calhoun and Company (Calhoun), for negligence after Glenn was injured in a workplace accident. Plaintiffs later added claims against OneBeacon America Insurance Company (OneBeacon) for benefits under an insurance policy (the Policy) which funds an employee welfare benefit plan Calhoun put in place for its employees (the Plan). Calhoun, in turn, asserted a claim against OneBeacon for any amounts owed under the Policy. Plaintiffs and Calhoun also asserted claims against Texas Business Purchasing Alliance (TBPA), Assurance Resources, Inc. (ARI), and Ty Templeton (Templeton) (collectively, the Agent Defendants), the agencies and agent which helped Calhoun purchase the Policy and, in so doing, allegedly made false statements and misrepresentations to Calhoun regarding the Policy in failing to explain the differences between a worker's compensation policy and an occupational accident policy. OneBeacon removed the action to this Court on August 14, 2013.

By order dated January 3, 2014, the Court remanded Plaintiffs' claims against Calhoun. Following agreed dismissal of other portions of this action, the parties agree the claims remaining in this action are: (1) Calhoun's insurance coverage claims against OneBeacon; (2) Calhoun's fraud

and negligent misrepresentation claims against the Agent Defendants; and (3) OneBeacon's counterclaim for costs and attorney's fees against Calhoun.[1]

Each of the parties has filed a motion for summary judgment. Specifically, OneBeacon argues: (1) the claims are barred due to Calhoun's failure to exhaust administrative remedies as required by the Employee Retirement Income Security Act of 1974 (ERISA); (2) OneBeacon properly denied any claim for benefits for Glenn because Glenn was not covered under the Policy; and (3) Calhoun's fraud and negligent misrepresentation claims fail because: (a) Calhoun cannot establish one or more elements of the claims, (b) the alleged misrepresentations were not made by an agent of OneBeacon, (c) virtually all of the claims are barred by the statute of limitations, and (d) the claims are preempted by ERISA.

TBPA and ARI maintain: (1) Calhoun's fraud and misrepresentation claims fail because: (a) they do not owe a duty to Calhoun, (b) they are not liable as a result of any statements made by Templeton, (c) Calhoun has not shown any actionable reliance, and (d) the majority of the claims are barred by the statute of limitations; and (2) Calhoun's insurance coverage claims fail because: (a) Glenn was not covered under the Policy, and (b) they did not have a contract with Calhoun.

Templeton contends Calhoun's claims against him fail because: (1) they are barred by the statute of limitations; (2) he did not owe a duty of care to Calhoun; (3) there is no evidence to support Calhoun's fraud claims; (4) Calhoun has not identified any misrepresentations made by Templeton; (5) claims of insufficient insurance coverage are not covered under the Deceptive Trade Practices Act (DTPA); and (6) Calhoun's damages are not the result of Templeton's conduct.

---

[1] Following voluntary dismissal of certain claims by the parties, on April 24, 2014, the Court entered an order setting forth the claims remaining in this action and granting the parties ten days to file any clarification. No party filed any clarification.

Finally, Calhoun asserts it is entitled to summary judgment on its claims against OneBeacon for failure to pay under the Policy because Glenn was covered under the Policy. The parties have filed responsive pleadings, and the matters are now ripe for determination.

**Analysis**

## I.      Legal Standard—Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993). The non-movant must respond to the motion by setting forth particular facts indicating there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the

-4-

opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id.*

## II.     Summary Judgment Evidence

Templeton is an independent retail insurance agent who offers clients insurance options from a number of different insurers. He first contacted Calhoun in 2006 seeking to act as Calhoun's insurance agent. OneBeacon Mot. Summ. J. [#56-4] Ex. C (Beaty Depo.) at 38; *id.* [#56-5] Ex. D (Calhoun Depo.) at 60; *id.* [#56-7] Ex. I (Cernera Aff.) ¶ 4; *id.* Ex. L (Templeton Aff. I) ¶¶ 2–3. Templeton originally facilitated the sale of an Occupational Accident, or "Occ Acc," insurance policy issued by BCS Insurance Company (BCS) to Calhoun in August 2006. Templeton Aff. I ¶¶ 2–3.

TBPA is a wholesale insurance agency, acting as an intermediary between insurance agents and insurance companies. ARI provides third-party administration of Occ Acc programs on behalf of insurance companies. TBPA & ARI's Mot. Summ. J. [#68-2] Ex. B (Templeton Aff. II) ¶ 2. OneBeacon began selling insurance policies in Texas in January 2008. Cernera Aff. ¶ 12.

The coverage originally issued by BCS was assumed by an insurance policy issued by OneBeacon (the Policy) with an original effective date of August 1, 2008. OneBeacon Mot. Summ. J. [#56-2] Ex. A (the Policy).[2] The Policy covers certain workplace injuries suffered by an "Eligible Person." The Policy provides for an "Eligible Person " to be covered, "the Policyholder must . . . pay the premium to Us on or before the Premium Due Date." *Id.* § V. The Policy further requires the Policyholder to "report the actual number of Eligible Persons on a monthly basis" and provides

---

[2] The Court's prior order granting Calhoun's motion to remand in part concluded the Policy is part of an ERISA plan. *See* Order of Jan. 3, 2014 [#33] at 8–10.

that the premium rate varies based on the number of Eligible Persons. *Id.* at 4 & § VI. The Premium

Due Date under the Policy is the first of each month. *Id.* at 1 & § I.

In an email sent October 6, 2009, Calhoun's office manager asked Templeton "I need to

know what our exposure is on Occ Acc vs if we had Workers Comp ins. If you confirm what I have

been told, we may want a quote on workers comp instead." Calhoun's Resp. to TBPA & ARI Mot.

Summ. J. [#71-2] Ex. 1-C. Templeton replied:

> The main difference is you get unlimited medical with work comp, while occ/acc you
> get between $300,000 and 1 million depending on what coverage you buy. Also
> employers liability come with work comp and is an option with occ/acc. I can quote
> both if you like, but work comp is more expensive.

*Id.* Calhoun did not obtain a worker's compensation policy until May 19, 2011. Calhoun Depo. at

111–12, 325–26.

Glenn was employed by Calhoun beginning April 13, 2010. OneBeacon Mot. Summ. J.

[#56-3] Ex. B at 3. Glenn was injured in the workplace on May 19, 2011. Beaty Depo. at 46; Resp.

to OneBeacon Mot. Summ. J. [#69-2] Ex. 1 (Calhoun Aff.) at 3. Calhoun reported the injury on May

25, 2011. *Id.* [#69-6], Ex. 1-D. OneBeacon notified Calhoun by letter dated July 29, 2011 addressed

to counsel for Calhoun (the Denial Letter) it was denying coverage under the Policy. In pertinent

part, the Denial Letter explained the claim was denied because:

> (2) it has not been established that Mr. Glenn was an Eligible Person as defined by
> the Policy; (3) even assuming Mr. Glenn was an Eligible Person as defined by the
> Policy, Calhoun was obligated to include him in its reporting of Eligible Persons for
> April and for May 2011, but did not do so–rather, Calhoun waited until he had been
> injured in the reported Accident to report him and request coverage; (4) even if Mr.
> Glenn was an Eligible Person as defined by the Policy, under Section VI of the Policy
> Calhoun was obligated to pay a premium for him on or before the Premium Due Date
> of May 1, 2011, which Calhoun failed to do; (5) Mr. Glenn was not a covered
> employee at the time of the reported Accident; (6) Sections II and IV of the Policy
> require that coverage for an injured employee must already be in place at the time of

an Accident, but no coverage was in place as to Mr. Glenn at the time of the reported Accident; (7) Section XI of the Policy excludes coverage for benefits attributable to injuries occurring or conditions existing prior to the Effective Date of coverage; (8) Section XI of the Policy excludes coverage for a Pre-Existing Condition or Injury; and (9) it is contrary to public policy to insure against a known loss or a loss in progress, and the reported Accident and Mr. Glenn's injuries occurred prior to Calhoun's request for coverage as to Mr. Glenn.

OneBeacon Mot. Summ. J. [#56-7] Ex. H (Denial Letter) at 1–2. The Denial Letter also set forth the procedure for appealing the denial of coverage, and explained the appeal must be in writing and received by OneBeacon within 180 days. *Id.* at 6–7. Neither Glenn nor Calhoun submitted an appeal. Cernera Aff. ¶ 9.

## III.  Application

As noted above, the claims remaining in this action fall into three categories. Specifically, (1) Calhoun's claim of coverage under the Policy; (2) Calhoun's state law claims for fraud and misrepresentation; and (3) OneBeacon's counterclaim for costs and attorney's fees. The parties have moved for summary judgment as to the claims in the first two categories. The Court will address them in turn.

## A.  Insurance Coverage Claims

OneBeacon has moved for summary judgment as to Calhoun's claims based on OneBeacon's denial of coverage under the Policy, arguing: (1) the claims are barred due to Calhoun's failure to exhaust administrative remedies as required by ERISA; and (2) Calhoun is not entitled to seek benefits under the Policy as OneBeacon properly denied any claim for benefits for Glenn because Glenn was not covered under the Policy. Calhoun has also moved for summary judgment against OneBeacon, arguing Glenn is covered under the Policy. TBPA and ARI have also moved for summary judgment, arguing Calhoun's insurance coverage claims fail because: (1) Glenn was not

covered under the Policy; and (2) they did not have a contract with Calhoun.  Templeton also contends the insurance coverage claims fail because Calhoun has not established any liability on his part.  The Court will address the arguments of OneBeacon and Calhoun first.

### 1. Exhaustion

OneBeacon first argues any claims by Calhoun for coverage under the Policy are barred due to a failure to exhaust administrative remedies.  The Fifth Circuit requires claimants seeking benefits from an ERISA plan to first exhaust all administrative remedies available under the plan before bringing suit to recover benefits.  *Coop. Benefit Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 336 (5th Cir. 2004); *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000).  The Fifth Circuit, however, has also made clear ERISA exhaustion is not a prerequisite to federal court jurisdiction.  *See Hager v. NationsBank N.A.*, 167 F.3d 245, 248 n.3 (5th Cir. 1999) (noting failure to exhaust administrative remedies does not deprive court of subject matter jurisdiction); *Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950 n.6 (5th Cir. 1995) (noting because exhaustion is not required by ERISA, it is not prerequisite to jurisdiction).  Accordingly, a plaintiff's failure to exhaust available administrative remedies may be excused on equitable grounds.  *See, e.g.,* *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) (considering whether failure to exhaust should be excused because administrative review would be futile and because plaintiff was denied "meaningful access" to review process); *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 233 (5th Cir. 1997) (holding plan administrator could not raise failure to exhaust administrative remedies because mechanism for appeal was not in place at time plaintiff's claim was denied and plaintiff made efforts to have his claim denial reviewed); *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295,

1302–03 (5th Cir. 1985) (addressing plaintiff's assertion of futility exception to ERISA exhaustion requirement).

Although not precisely clear, as an initial matter, Calhoun suggests the Policy is not governed by ERISA. As noted above, the Court addressed, and rejected, that argument in an order dated January 3, 2014, granting in part Calhoun's motion to remand. Calhoun also asserts exhaustion is not mandated because the terms of the Policy do not explicitly require exhaustion. The origins of the exhaustion requirement, however, are based on judicial interpretations of the ERISA statutory scheme and Congressional intent. *See Denton*, 765 F.2d at 1301 (discussing history and concluding "Congress' ERISA fiduciary framework mandates the exhaustion requirement").

Calhoun further argues exhaustion is not required because the claim for coverage falls outside the exhaustion requirement. *See Harrow v. Prudential Ins. Co.*, 279 F.3d 244, 252 (3rd Cir. 2002) (indicating ERISA exhaustion requirement does not apply to claims arising from violations of substantive statutory provisions); *see also Chailland*, 45 F.3d at 950 (discussing exceptions to ERISA exhaustion requirement and finding requirement did not apply where claim did not involve any action of a plan covered by ERISA). Calhoun's argument is misplaced. The issue before the Court is clearly an attack on a denial of benefits under an ERISA plan. As such, it falls squarely within the ERISA exhaustion requirement. *Bourgeois*, 215 F.3d at 479 ("[C]laimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits."). Indeed, even the case Calhoun itself relies on views the exhaustion requirement as applicable to such claims. *See Harrow*, 279 F.3d at 253 ("Plaintiffs cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims."); *see also Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir.

-9-

1988) (noting exhaustion doctrine would be "rendered meaningless" if plaintiffs were allowed to bypass exhaustion by artfully dressing contract claims in statutory clothing).

The summary judgment evidence establishes Calhoun was advised of the requirement to exhaust administrative remedies, the manner in which to do so, and the deadline for doing so in the Denial Letter sent to Calhoun's counsel dated July 29, 2011.  Calhoun maintains the exchange of correspondence between its counsel and counsel for OneBeacon, "beginning on July 19, 2011 and continuing thereafter" was "in response to the initial denial by One Beacon [sic] of the Glenn claim" and thus constitutes an appeal of the decision.  Resp. to OneBeacon Mot. Summ. J. [#69] at 12.

Calhoun's argument is flawed for at least two reasons.  First, although Calhoun refers to correspondence exchanged between counsel following the denial of benefits, it has not presented copies of the correspondence as part of its summary judgment evidence.  Moreover, Calhoun has pointed to no evidence it complied with the instructions provided as to filing an appeal.  Specifically, the Denial Letter states the appeal must be sent to Robert E. Pierce, a claims examiner for OneBeacon.  Denial Letter at 7.  Accordingly, the Court concludes Calhoun has failed to comply with the ERISA exhaustion requirement.  *See Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1018–19 (5th Cir. 2009) (rejecting argument that letter sent to insurer satisfied exhaustion requirement where letter merely expressed an "intention to appeal"); *Holmes v. Proctor & Gamble Disability Benefit Plan*, 228 F. App'x 377, 379 (5th Cir. 2007) (unpublished) (holding plaintiff "did not substantially comply with the Plan's appeal procedures [because he] stated only his intent to appeal the Plan's decision at some time in the future").  OneBeacon is entitled to summary judgment on Calhoun's claim of entitlement to benefits under the Policy for this reason alone.

### 2. Coverage for Glenn

OneBeacon also contends Calhoun cannot recover on any claim based on a right to benefits under the Policy due to the "fortuity doctrine" because Glenn was not covered under the Policy at the time of his injury. The "fortuity doctrine" bars coverage for a loss the insured already knows to have occurred or which is in progress at the inception of the carrier's initial policy. *Dall. Nat'l Ins. Co. v. Sabic Ams., Inc.*, 355 S.W.3d 111, 119 (Tex. App.—Hous. [1st Dist.] 2011, pet. denied); *Certain Underwriters at Lloyd's Subscribing to Policy No. WDO-10000 v. KKM Inc.*, 215 S.W.3d 486, 495 (Tex. App.—Corpus Christi 2006, pet. denied); *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 767 (Tex. App.—Fort Worth 2006, pet. denied). "The doctrine has its roots in the prevention of fraud; because insurance policies are designed to insure against fortuities, fraud occurs when a policy is misused to insure a certainty." *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 75 (Tex. App.—Dallas 2001, pet. denied).

As set forth above, the summary judgment evidence establishes the Policy required Calhoun as the Policyholder "to report the actual number of Eligible Persons on a monthly basis" and to "pay the premium to [OneBeacon] on or before the Premium Due Date." The Policy §§ V & VI. According to OneBeacon's view of the evidence, Calhoun never reported Glenn to OneBeacon or paid premiums for Glenn under the Policy. Calhoun disagrees on both points.

In support, OneBeacon largely relies on the testimony of Becky Beaty (Beaty), the office manager for Calhoun. Beaty Depo. at 14; Calhoun Depo. at 11. L. Ray Calhoun (L. Ray), the president of Calhoun, testified Beaty was responsible for reporting employees to OneBeacon. Calhoun Depo. at 195–96. Beaty testified she forwarded the information regarding new employees to ARI or her contact at Templeton's office. Beaty Depo. at 86–87, 110–12. ARI used the list of

names to calculate the proper amount of premium to charge for the Policy, send invoices, and collect the premiums due. *Id.* at 114–15, 122–24. Beaty testified, in order to save money, L. Ray decided not to cover all his company's employees under the Policy. *Id.* at 123.

Calhoun maintained company records listing each of its employees. *See* OneBeacon Mot. Summ. J. [#56-6] Ex. F. ARI sent Calhoun monthly invoices for the premiums due under the Policy. The invoices contain a "Current Employee Census," listing the names and dates-of-hire of employees as well as the amount of premiums charged for each individual employee next to the name of the employee. *Id.* Ex. E. A comparison of Calhoun's records of its employees and the monthly invoices sent to Calhoun for premiums owed under the Policy establishes Calhoun employed a number of people who were not listed in the monthly invoices. *Id.* Exs. E–F.

Calhoun's records list Glenn as an employee starting with the month of April 2010. *Id.* Ex. F. The first monthly ARI invoice listing Glenn as an employee was the invoice for the billing month of July 2011, which shows a billing date of June 5, 2011, and a payment due date of July 1, 2011. *Id.* Ex. E.

Beaty testified that immediately after Glenn was injured in the workplace on May 19, 2011, she was concerned she had not reported Glenn to ARI or Templeton. At L. Ray's urging, she checked and discovered she had not. Beaty Depo. at 46–47. Beaty agreed "Mr. Calhoun's response was to make sure that [Glenn] was covered and reported immediately." *Id.* at 47–48. Thus, Beaty sent an email to Templeton's office at 12:23 p.m. on May 19, 2011, asking that Glenn and three other individuals be added to the Policy.[3] *Id.* at 48, 53; OneBeacon Mot. Summ. J. [#56-7] Ex. G. Beaty

---

[3] Notably, the email lists a date-of-hire for Glenn of April 18, 2011. Beaty admitted she knew that was a lie. Beaty Depo. at 53–54. Apparently as a result, the invoice for the billing month of July 2011 identifies Glenn's date-of-hire as April 18, 2011. OneBeacon Mot. Summ. J. [#56-6] Ex. E. Documentation submitted by Beaty on May 25, 2011,

admitted her email was an attempt to correct the problem presented by her failure to report Glenn

as an employee earlier.  She stated she and L. Ray had conversations about the issue on May 19 and

agreed L. Ray "understood that [she was] attempting to get Mr. Glenn covered even though he may

have said to take the risk of not covering him."  Beaty Depo. at 57–58.  Beaty testified:

> Q: You were trying to make sure that Mr. Glenn was covered even though you
> were reporting him to the insurance company after he had been in an accident.
> That's true, isn't it?
>
> A: Yes.
>
> * * *
>
> Q: [Y]ou understood when you reported Mr. Glenn immediately after his injury
> that it was not proper to seek coverage for a risk that already turned into a loss,
> but you were trying to do that anyway and that's true, isn't it? . . .
>
> A: Yes.

*Id.* at 54, 135–36.

OneBeacon maintains this evidence establishes Glenn was not covered under the Policy at

the time of his injury because he had never been reported as an employee by Calhoun, nor had

Calhoun paid a premium for him.

Calhoun disagrees and first argues Glenn was properly reported because the Policy only

requires the Policyholder to report an "Eligible Person" to the Texas Workforce Commission (TWC)

quarterly, and Calhoun complied with this requirement.  *See* Resp. to OneBeacon Mot. Summ. J.

[#69-4] Ex. 1-B.

Calhoun is correct the definition section of the Policy states an "Eligible Person" must "be

identified by the Policyholder" on the quarterly report filed with the TWC.  The Policy § I.  But the

---

in support of Glenn's claim following his injury also identifies Glenn's start date as April 18, 2011.  Resp. to OneBeacon
Mot. for Summ. J. [#69-6] Ex. 1-D.

Policy also requires the Policyholder to "report the actual number of Eligible Persons on a monthly basis" and "remit the premium due" based on that information. *Id.* § VI. Calhoun's reliance on submitting a quarterly report to the TWC as satisfying the reporting requirement of the Policy is not well-founded in light of the monthly nature of the premium calculation and billing under the Policy.

Calhoun also argues the premium payment requirement was satisfied for two reasons. First, Calhoun reasons because it made at least a partial payment for May 2011, the Court should allocate a portion of the payment to cover Glenn.[4] Second, Calhoun asserts the Policy permitted a grace period for timely making payments, and the payment tendered on June 14, 2011, for the April, May, and June 2011 premiums was sufficient to provide coverage to Glenn at the time of his injury on May 19, 2011.

Calhoun's arguments fall short of the mark on several bases. First, the Premium Due Date under the Policy is the first of each month. The Policy also contains a thirty-one day Grace Period permitting coverage to continue if payment is made within that time. The Policy at § VI. Calhoun admits he did not submit a payment for the time period in which Glenn was injured until June 14, 2011, which is outside the thirty-one day Grace Period. Moreover, the Grace Period provision states, "[a]fter the first premium, any premium not paid by its due date is in default," and only concerning those premiums in default does the Grace Period apply. *Id.* Calhoun's "first premium" paid for Glenn, however, was the June 14, 2011 payment. As such, the Grace Period is inapplicable.

Second, Calhoun points to nothing in the Policy which contemplates partial payments or permits allocation of partial payments so as to cover employees not identified on a billing invoice.

---

[4] Calhoun suggests OneBeacon had a history of difficulty in calculating the premium payments and accepting partial payments from Calhoun. Resp. to OneBeacon Mot. Summ. J. [#69] ¶¶ 12–13. No evidence, however, is cited in support of this assertion.

Moreover, Calhoun's argument would require a retroactive withdrawal of coverage for employees who were identified, presumably employees who did not suffer a workplace injury.

Finally, as OneBeacon points out, Calhoun's argument flouts the reality that the invoices submitted to Calhoun charged premiums for specifically named individual employees. Simply put, Calhoun asks this Court to permit it to buy insurance after the fact to cover a known loss. This request clearly violates the "fortuity doctrine" and is therefore barred by Texas law. *See Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex. App.—Hous. [14th Dist.] 1995, no writ) (identifying basic concept of insurance as wager against the occurrence or non-occurrence of a specified event in which "the carrier insures against a risk, not a certainty"). Accordingly, OneBeacon is entitled to summary judgment on Calhoun's insurance coverage claims.

### 3. Insurance Claims Against Other Defendants

TBPA and ARI have also moved for summary judgment as to Calhoun's insurance coverage claims. They first maintain the claims fail because Glenn was not covered under the Policy. TBPA and ARI also contend the claims fail because they are not parties to the Policy contract. Templeton similarly contends he is not liable to Calhoun for any claims based on coverage.

As an initial matter, the Court notes it is not at all clear Calhoun is still asserting any insurance coverage based claims against any party other than OneBeacon. As set forth above, in an order dated April 24, 2014, the Court set forth the remaining claims as including, in pertinent part, "Calhoun's insurance coverage claims against OneBeacon" and directed the parties to file any clarification to the contrary. No party filed any clarification. As a result, it appears Calhoun is no longer pursuing any claims based on insurance coverage against any party other than OneBeacon.

-15-

Moreover, the Court agrees with TBPA and ARI that Calhoun has no contractual relationship with them under the Policy and therefore has no basis to impose liability against them for any failure to provide insurance coverage under the Policy. Finally, as OneBeacon has demonstrated, Calhoun's insurance coverage claims fail on the merits, and any claims based on insurance coverage against TBPA, ARI, and Templeton fail for the same reasons.

## B. State Law Claims

OneBeacon, TBPA, ARI, and Templeton (Third-Party Defendants) have all also moved for summary judgment as to Calhoun's state law claims based on fraud and misrepresentation on a number of bases.

Before addressing the arguments presented by Third-Party Defendants, a brief discussion of the factual basis of these claims is appropriate. Calhoun's petition asserting these claims cites as the sole basis of the misrepresentations the October 6, 2009 email exchange between Beaty and Templeton set forth above. *See* Notice Removal [#1-3], Ex. C (Def.'s 2d Am. Third-Party Pet.) ¶ 11. In responding to discovery, Calhoun additionally identified an oral representation made to L. Ray in August 2006 by Templeton who allegedly stated an Occ Acc policy "would do everything workers' compensation would do, but for less money." OneBeacon Mot. Summ. J. [#56-3] Ex. B at 4.[5] In responding to the motions for summary judgment, Calhoun asserts for the first time alleged misrepresentations made by Carolyn S. Duane (Duane), the president of ARI, in letters dated June 13, 2008, and April 20, 2011, in which Duane supposedly extolled the benefits of the Policy without

---

[5] In responding to discovery, Calhoun also identified as "misrepresentations" various portions of the Policy. Both Beaty and Calhoun, however, testified they had not read the Policy prior to the filing of this lawsuit. Beaty Depo. at 109; Calhoun Depo. at 62. Calhoun cannot rest a claim of misrepresentation on language which it was not aware of, nor can Calhoun assert reliance on the language of the Policy it did not read. *See Dolenz v. A. B.*, 742 S.W.2d 82, 85 (Tex. App.—Dallas 1987, writ denied) (finding because plaintiff lender delivered loan proceeds to borrower prior to any representations by borrower's attorney to plaintiff, plaintiff could not have detrimentally relied on those representations).

disclosing the legal limitations of an Occ Acc policy in comparison with a worker's compensation policy.  Resp. to TBPA & ARI Mot. Summ. J. [#71-2] Exs. 1-D & 1-E.

### 1. Defenses Unique to OneBeacon

As an initial matter, as discussed above, the parties did not contest this Court's Order of April 24, 2014 [#53] when the Court laid out the remaining claims in this lawsuit to include only: (1) Calhoun's insurance coverage claims against OneBeacon; (2) Calhoun's fraud and negligent misrepresentation claims against the Agent Defendants; and (3) OneBeacon's counterclaims for costs and attorney's fees against Calhoun.  As a result, it appears Calhoun is no longer pursuing the fraud and negligent misrepresentation claims against OneBeacon, and OneBeacon's motion for summary judgment could be granted on this basis alone.[6]

OneBeacon also contends Calhoun's state law claims against it are preempted by ERISA.  Because the Court has determined the Policy is governed by ERISA, the remaining step in determining whether Calhoun's state law claims are preempted by ERISA requires the Court to determine whether Calhoun's state law claims "relate to" the ERISA plan.  29 U.S.C. § 1144(a) (providing ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan").  State law claims addressing an area of exclusive federal concern, such as the right to receive benefits under an ERISA plan, and directly affecting the relationship between traditional ERISA entities "relate to" the ERISA plan.  *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 382 (5th Cir. 2011); *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 800 (5th Cir. 2008); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 209

---

[6] Moreover, as OneBeacon points out, Calhoun's response to its motion for summary judgment wholly fails to address these claims.

(2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remed[ies] conflicts with the clear congressional intent to make the ERISA remed[ies] exclusive and is therefore preempted.").

OneBeacon argues Calhoun's state law claims against it are preempted because the only damages Calhoun claims to have suffered are the benefits bargained for in purchasing the Policy, i.e. the payments provided for under the Policy. Although Calhoun's petition is less than precisely clear regarding damages, the Court agrees Calhoun does not appear to be seeking any other damages against OneBeacon. Nor does Calhoun suggest otherwise in responding to the motion for summary judgment. The Court therefore concludes any state law claims Calhoun is asserting against OneBeacon are preempted. *See Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 979 (5th Cir. 1991) (finding determination plan is governed by ERISA tantamount to determination plaintiff's state law causes of action are barred); *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63 (1987) (determining common law contract and tort claims seeking to recover benefits preempted by ERISA); *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242–44 (5th Cir. 2006) (holding breach of contract claim preempted by ERISA); *Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437, 450 (5th Cir. 2006) (finding state law breach-of-contract claim to recover difference between what annuity will pay and what plaintiff alleges he was promised annuity would pay is claim that "relate[s] to" an "employee benefit plan" and is preempted by ERISA); *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 276–78 (5th Cir. 2004) (holding claims under Texas Insurance Code and for breach of duties of good faith and fair dealing preempted by ERISA); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 191 (5th Cir. 2000) (deciding state law claims for breach of contract, breach of duty of good faith and fair dealing, negligent misrepresentation, common law discrimination, waiver, estoppel,

ratification, and under Texas Insurance Code preempted by ERISA); *Hogan v. Kraft Foods*, 969 F.2d 142, 144–45 (5th Cir. 1992) (finding ERISA preempts plaintiff's state law claims for breach of contract, violations of insurance code, deceptive trade practices, breach of duty of good faith and fair dealing, negligence, and intentional infliction of emotional distress). Accordingly, OneBeacon is entitled to summary judgment as to Calhoun's state law claims.

### 2. Statute of Limitations

The Third-Party Defendants contend virtually all of Calhoun's state law claims are barred by the applicable statutes of limitations. Calhoun has specifically asserted claims under the DTPA, for fraud, under the Texas Insurance Code, for negligence, and for negligent misrepresentation. Claims based on a violation of the Texas Insurance Code must be brought "before the second anniversary" of the date the improper practice occurred or the date the plaintiff discovered or, by the exercise of reasonable diligence, should have discovered the improper practice. TEX. INS. CODE ANN. § 541.162. Claims under the DTPA similarly must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or, in the exercise of reasonable diligence, should have discovered the occurrence of the false, misleading, or deceptive act or practice. TEX. BUS. & COM. CODE ANN. § 17.565; *Haidar v. Nortex Found. Designs, Inc.*, 239 S.W.3d 924, 926 (Tex. App.—Dallas 2007, no pet.). Claims for common law fraud are governed by a four year limitations period. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4); *Newby v. Enron Corp.*, 542 F.3d 463, 468 (5th Cir. 2008). Claim for negligence and negligent misrepresentation are governed by a two year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003; *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 354–55 (5th Cir. 2008).

-19-

While the parties agree on the length of the applicable limitations periods, they disagree as to when limitations began to run.  In this case, the analysis is clouded by Calhoun's rather vague assertion of its claims.  Although not precisely clear, it appears Calhoun alleges various misrepresentations were made to it by the Agent Defendants concerning the scope of coverage afforded by the Policy.  More specifically, Calhoun is apparently contending the Agent Defendants failed to adequately explain the difference between an Occ Acc policy and a worker's compensation policy.  Calhoun maintains, as a result, it chose an Occ Acc policy, resulting in exposure to far greater legal liability to Glenn for his workplace injury.

Under Texas law, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996).  The Supreme Court of Texas has also said "[a] cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998).

Calhoun first suggests its state law claims accrued on the date OneBeacon denied coverage— July 29, 2011.  Calhoun correctly points out that when insurance benefits are at issue, the statute of limitations begins to run when the insurer denies the claim for those benefits. *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 373 (5th Cir. 2011); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003).  Calhoun's state law claims against the Agent Defendants, however, do not seek benefits under the Policy, but rather assert the Agent Defendants misled Calhoun.  This legal concept is therefore inapplicable.

-20-

Calhoun next suggests its state law claims did not accrue until Glenn filed suit against Calhoun in September 2012.  According to Calhoun, it was not until then it suffered any damages as a result of the misrepresentations by the Agent Defendants because the damages suffered are Calhoun's inability to assert the legal defenses available under the worker's compensation scheme in Texas.

Third-Party Defendants, in turn, contend Calhoun's cause of action accrued at the time the Policy was issued on August 1, 2008.  They correctly point out Texas courts have held "an insured has a duty to read the policy and, failing to do so, is charged with knowledge of the policy terms and conditions." *Ruiz v. Gov't Emp. Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.—El Paso 1999, no pet.); *Amarco Petroleum, Inc. v. Tex. Pac. Indem. Co.*, 889 S.W.2d 695, 699 (Tex. App.—Hous. [14th Dist.] 1994, writ denied).  Third-Party Defendants therefore maintain Calhoun should have known of the facts underlying the state law claims—the fact the Policy did not provide the legal benefits a worker's compensation policy would provide—by reading the Policy at the time it was issued. Specifically, Third-Party Defendants point to the language on the cover page of the Policy stating in all capital letters:  "THIS IS  NOT A POLICY OF WORKERS' COMPENSATION INSURANCE," and "THE POLICYHOLDER LOSES THOSE BENEFITS WHICH WOULD OTHERWISE ACCRUE UNDER THE WORKERS' COMPENSATION LAWS." The Policy at 1.

Several Texas courts have agreed with Third-Party Defendants' view of the law. *See Khoei v. Stonebridge Life Ins. Co.*, No. H-13-2181, 2014 WL 585399, at *7 (S.D. Tex. Feb. 14, 2014) (finding claims insurer misrepresented policy coverage in selling policy accrue when policy is issued); *Steadfast Ins. Co. v. SMX 98, Inc.*, No. H-06-2736, 2009 WL 890398, at *16 (S.D. Tex. Mar.

-21-

30, 2009) (stating cause of action based on insurer's misrepresentation or failure to disclose in connection with sale of insurance policy accrues when policy is issued); *Rangel v. Progressive Cnty. Mut. Ins. Co.*, 333 S.W.3d 265, 269 (Tex. App.—El Paso 2010, pet. denied) (deciding claims based on alleged misrepresentations concerning extent of insurance coverage accrued when plaintiffs purchased the policy); *Mauskar v. Hardgrove*, No. 14-02-00756-cv, 2003 WL 21403464, at *3 (Tex. App.—Hous. [14th Dist.] June 19, 2003, no pet.) (same, stating "[h]ad [plaintiff] read the policies at the time he purchased them, he would have known that the policies were not going to meet his alleged pay-out expectations"). Notably, Calhoun cites no legal authority to the contrary.

Moreover, the facts of this case render Calhoun's argument inapposite. Calhoun was sued in August 2010 by another employee who was injured at work. OneBeacon Mot. Summ. J. [#56-7] Ex. M; Calhoun Depo. at 42–43, 274. After that lawsuit, L. Ray became aware of some of the limitations of the Policy and began inquiring about different options. Calhoun Depo. at 275–76. He told Beaty to "Check into this. Find some insurance that does cover that, and also look into Workers' Comp." *Id.* at 44. Beaty did so and was provided an excerpt of an article discussing the discussing the differences between worker's compensation policies and occupational accident policies by another insurance agent. OneBeacon Mot. Summ. J. [#56-7] Ex. O. Calhoun was therefore clearly aware of the extent of coverage afforded by the Policy well before the filing of Glenn's lawsuit, the date Calhoun maintains the state law causes of action accrued.

Calhoun first asserted claims against the Third-Party Defendants in a third-party petition filed in state court on July 8, 2013. As set forth above, the original purchase date for the Policy was August 2008. The Policy was thereafter renewed yearly. The Court thus concludes Calhoun's state law claims based on representations made in August 2006 and June 2008 accrued at the latest on the

original purchase date for the Policy and are barred by limitations. Calhoun's state law claims based on Templeton's email in 2009 accrued at the latest on the subsequent renewal of the Policy in August 2010. Thus, the only claim based on that representation which is not barred by limitations is the claim for fraud. Similarly, Calhoun's state law claims based on the April 2011 email accrued at the latest on the subsequent renewal of the Policy in August 2011. Therefore, no claim based on that representation is barred by limitations. Accordingly, Third-Party Defendants are entitled to summary judgment as to all of Calhoun's state law claims except for fraud based on Templeton's 2009 email and Calhoun's claims based on Duane's 2011 letter. The Court will, therefore, restrict the following discussion solely to those claims.

### 3. No Actionable Misrepresentations

Third-Party Defendants contend Templeton's 2009 email does not provide a basis for legal liability for several reasons. First, OneBeacon, TBPA, and ARI all contend Templeton was not acting as their agent and did not have authority to render them vicariously liable. In support, OneBeacon provides the affidavit of the employee in charge of the occupational accident insurance program. She states Templeton was not an employee, agent, or other representative of OneBeacon and had no affiliation with OneBeacon. Cernera Aff. ¶ 4. Templeton also states in affidavit testimony he was not acting on behalf of, or as agent for, OneBeacon. Templeton Aff. I ¶¶ 4–7. Calhoun presents no evidence to the contrary. Accordingly, OneBeacon is entitled to summary judgment as to Calhoun's state law claims based on any statement by Templeton.

Templeton also states in affidavit testimony he was not acting on behalf of, or as agent for, TBPA or ARI. Templeton Aff. II ¶ 4.[7]  In response, Calhoun points to documents "that Templeton signed as an agent" that are "styled with TBPA headings or contain directions to return the documents to TBPA." Resp. to TBPA & ARI Mot. Summ. J. [#71] at 14.  Calhoun contends because "[t]here is no showing in said documents that Templeton was not the agent of ARI/TBPA," neither TBPA nor ARI should be granted summary judgment on this basis. *Id.*

A review of the documents rebuts Calhoun's argument.  The two documents are a request for a quote for insurance and an application for insurance.  Each is, indeed, signed by Templeton. However, it is clear Templeton signed as an insurance agent for Calhoun, respectively seeking a quote and applying for insurance from TBPA. *Id.* [#71-2] Exs. 1-A & 1-B.  Rather than support Calhoun's assertion, the two documents support the position of TBPA and ARI that Templeton was not acting on their behalf.  Accordingly, TBPA and ARI are entitled to summary judgment as to Calhoun's state law claims based on any statement by Templeton.

Templeton contends Calhoun cannot impose liability on him for alleged misrepresentations concerning the differences between Occ Acc and worker's compensation for several reasons.  First, Calhoun points to no evidence it ever communicated to Templeton a desire to obtain worker's compensation insurance.  Texas courts have declined to impose on an insurance agent a duty to explain policy terms to an insured.  *Ruiz*, 4 S.W.3d at 841; *Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 300 (Tex. App.—El Paso 1996), *aff'd*, 966 S.W.2d 482 (Tex. 1998). Therefore, absent some affirmative misrepresentation of the terms of coverage by an insurer, an

---

[7] Both Beaty and L. Ray admitted in their depositions they had never spoken directly with anyone from ARI or TBPA regarding the scope of coverage under the Policy or the differences between Occ Acc and worker's compensation insurance. *See* TBPA & ARI's Mot. Summ. J. [#68-1], Ex. A at 100–03; *id.* [#68-3], Ex. C at 303.

insured's mistaken belief concerning the extent of coverage is not grounds for a misrepresentation claim. *Burton v. State Farm Mut. Auto. Ins. Co.*, 869 F. Supp. 480, 486 (S.D. Tex. 1994) (common law claim); *State Farm Cnty. Mut. Ins. Co. v. Moran*, 809 S.W.2d 613, 620–21 (Tex. App.—Corpus Christi 1991, writ denied) (DTPA claim).  Nor is an agent negligent for failing to obtain insurance coverage of a type that was not requested.  *See Sonic Sys. Int'l., Inc. v. Croix*, 278 S.W.3d 377, 393–94 (Tex. App.—Hous. [14th Dist.] 2008, pet. denied) (finding no legal duty arises on part of insurance agent owed to client merely because agent has knowledge of need for additional insurance); *Moore v. Whitney–Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.) (deciding agent did not breach any duty where insured admitted he never requested a specific type of coverage and agent provided policy of insurance in accordance with understanding of insured's expectations);  *see also West Hous. Airport, Inc. v. Millennium Ins. Agency, Inc.*, 349 S.W.3d 748, 754 (Tex. App.—Hous. [14th Dist.] 2011, pet. denied) (finding insurance broker does not have duty to disclose coverage limitations under comprehensive general liability policy unless inclusion of limitation renders policy non-compliant with coverage requested by client).

Second, Calhoun's own summary judgment evidence demonstrates it was well aware it was not purchasing worker's compensation insurance.  The application referenced above was signed by Beaty on behalf of Calhoun on August 1, 2006.  In pertinent part, the application states "WE ACKNOWLEDGE AND FULLY UNDERSTAND:"

> THIS IS NOT A PROGRAM OF WORKERS' COMPENSATION INSURANCE, WE DO NOT BECOME A SUBSCRIBER TO THE WORKERS' COMPENSATION SYSTEM BY PURCHASING THIS COVERAGE AND IF WE ARE A NON-SUBSCRIBER, WE LOSE CERTAIN COMMON LAW DEFENSES TO SUIT AS WELL AS CERTAIN LIMITATIONS ON LIABILITY THAT WOULD OTHERWISE ACCRUE UNDER THE WORKERS' COMPENSATION LAWS. WE MUST COMPLY WITH THE WORKERS' COMPENSATION LAW

AS IT PERTAINS TO NON-SUBSCRIBERS AND THE REQUIRED
NOTIFICATIONS THAT MUST BE FILED AND POSTED.

Resp. to TBPA & ARI Mot. Summ. J. [#71-2] Ex. 1-A.

In addition, as set forth above, in 2010 Beaty and L. Ray began separately investigating the
differences between worker's compensation policies and occupational accident policies, and sought
the advice of an insurance agent other than Templeton in so doing. OneBeacon Mot. Summ. J. [#56-
7] Ex. O.  Accordingly, the Court concludes Calhoun has not pointed to evidence showing the
requisite elements to establish a claim of fraud based on Templeton's email.  *See TIG Ins. Co. v.
Sedgwick James of Wash.*, 276 F.3d 754, 762–63 (5th Cir. 2002) (finding elements of common law
fraud including material misrepresentation, intent by defendant for plaintiff to rely on statement, and
actual reliance not satisfied by evidence insurance agent misunderstood general liability policy to
include additional insured clause).

Finally, as to Duane's 2011 letter, as noted above, Calhoun did not point to the letter as a
basis for any claim until responding to the motions for summary judgment.  For this reason alone,
the letter cannot support a claim for relief by Calhoun.  Moreover, the body of the letter refutes
Calhoun's contention Duane was assuring the renewed Occ Acc coverage was comparable to
worker's compensation coverage.  In the letter Duane states she is "excited to announce our new
program which will replace your current Occupational Accident product."  Resp. to TBPA & ARI
Mot. Summ. J. [#71-2] Ex. 1-D. Duane details several new features, none of which address coverage
differences between Occ Acc and worker's compensation insurance.  Duane then specifically states
"[a]ll of your benefits have either remained the same or increased (as reflected above)." *Id.* Absent

from the letter is any affirmative misrepresentation concerning the scope of coverage afforded by the Policy to Calhoun. Accordingly, the letter is insufficient to support a claim for relief by Calhoun.

## Conclusion

Based on the foregoing, the Court GRANTS summary judgment in favor of OneBeacon, TBPA, ARI, and Templeton, and DENIES Calhoun's motion for summary judgment. The only remaining claims in this case are OneBeacon's counterclaims for costs and attorney's fees against Calhoun.

Accordingly,

IT IS ORDERED that OneBeacon America Insurance Company's Motion for Summary Judgment [#56]; is GRANTED;

IT IS FURTHER ORDERED that Defendants Texas Business Purchasing Alliance, Inc. and Assurance Resources, Inc.'s Motion for Final Summary Judgment [#68]; is GRANTED;

IT IS FURTHER ORDERED that Third-Party Defendant Ty Templeton's Motion for Summary Judgment [#74]; is GRANTED;

IT IS FINALLY ORDERED that Third Party Plaintiff, L. Ray Calhoun & Co., d/b/a Calhoun and Company, et al.'s Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment [#78] is DENIED.

SIGNED this the 27th day of January 2015.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-27-